HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CITIZENS' ALLIANCE FOR PROPERTY
RIGHTS,

              Plaintiff,

    v.

THE CITY OF DUVALL,

              Defendant.

CASE NO. C12-1093RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendant's motion for summary judgment. Dkt. # 14.  Only Plaintiff requested oral argument, but the court finds oral argument unnecessary.  For the reasons stated below, the court GRANTS the motion and directs the clerk to enter judgment for Defendant.

## II.  BACKGROUND

The Citizen's Alliance for Property Rights (the "Alliance") is probably not the most likely candidate to bring a suit invoking the Clean Water Act (33 U.S.C. Ch. 26, "CWA").  The Alliance is primarily concerned with defending the property rights of its members.  It also purports to be concerned about the environment, but believes that individual property owners are best suited to determine how to protect the environment. The Clean Water Act, with its wide-ranging government control of property uses that impact water quality, seems at odds with the Alliance's purposes, to say the least.

ORDER – 1

Among the Alliance's members are Steve and Rhonda Mills, who own a home in the City of Duvall. Roads and housing developments surround the Mills property, with the exception of a protected wetland that abuts a portion of the property's southern border. The Alliance contends that the City is discharging stormwater[1] from a variety of point sources onto the Mills property. They do not allege that the discharge harms water. Both parties' briefing suggests that the Alliance's true goal is to force the City to divert stormwater around the Mills property so that the Mills can pursue their goal of using an alleged wetland on the southern portion of their property as they see fit. That goal has put the Mills in conflict with the City for years. The City contends that any discharge of water onto the Mills property preserves the natural flow of water into the wetland.

If the Alliance hoped to have the court resolve this long running dispute, it will be disappointed. In the court's view, one fact is dispositive. There is no evidence that any portion of the Mills property is part of the "navigable waters" of the United States within the meaning of the CWA. The CWA's extends only as far as those waters and activities that impact them. The Alliance has not established the foundation of a CWA suit.[2]

### III.   ANALYSIS

The court begins its analysis by reciting the familiar summary judgment standard, which requires it to draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P.

---

[1] Stormwater is "surface water generated by precipitation events, such as rainstorms, which flows over streets, parking lots, commercial sites, and other developed parcels of land." *Natural Resources Defense Council, Inc. ("NRDC") v. County of Los Angeles*, No. 10-56017, 2013 U.S. App. LEXIS 16416, at *5 (9th Cir. Aug. 8, 2013).

[2] Although the Alliance's suit does not succeed, the court disagrees with the City's contention that the Alliance lacked standing to bring it. The Alliance demonstrates both a "case or controversy" within the meaning of Article III of the United States Constitution and that the Alliance is an organization with standing to seek redress of that case or controversy. *See*, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

ORDER – 2

56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

The CWA's broad prohibition on the "discharge of any pollutant" (33 U.S.C. § 1311(a) is, following a labyrinth of statutory definitions, a ban on the "addition of any pollutant to navigable waters from any point source" (33 U.S.C. § 1362(12)(A)), where a "pollutant" is virtually any material from "chemical wastes" to "sand" that is discharged into water (33 U.S.C. § 1362(6)).[3]

Here, the court focuses on the CWA's requirement of pollution into "navigable waters."  By statute, those are "the waters of the United States, including the territorial seas."  33 U.S.C. § 1362(7).  One needs no legal training to query whether a landlocked residential property is part of the "waters of the United States," but both the courts and the executive agencies charged with interpreting and enforcing the CWA have always interpreted the phrase broadly.  *See Rapanos v. United States*, 547 U.S. 715, 722 (2006) (describing executive branch's assertion of authority over "virtually any parcel of land containing a channel or conduit – whether man-made or natural, broad or narrow, permanent or ephemeral – through which rainwater or drainage may occasionally or intermittently flow").  The current scope of the phrase in the CWA is not entirely clear.  The Supreme Court's most recent inquiry, in *Rapanos*, yielded a judgment but no

---

[3] Among the many issues the court does not reach today is the City's contention that the Alliance has failed to prove that any water discharged onto the Mills property contains pollutants. Stormwater is a pollution risk. *NRDC*, 2013 U.S. App. LEXIS 16416 at *5 ("When stormwater courses over urban environs, it frequently becomes polluted with contaminants . . . .").  The Alliance has not tested the water the City discharges on the Mills property, but contends that it must be polluted, given the land over which it runs before being discharged.

ORDER – 3

majority opinion.  A four-justice plurality would have limited the "waters of the United States" within the scope of the CWA to streams, oceans, rivers, and lakes, excluding "channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall."  547 U.S. at 739.  Justice Kennedy, who concurred only in the judgment, rejected the plurality's definition and focused (as had previous cases) on whether the water in question had a "significant nexus" to "navigable waters in the traditional sense."  *Id.* at 779.

*Rapanos*, like this case, was concerned with whether "wetlands" are "waters" within the scope of the CWA.  Both Justice Kennedy and the plurality agreed that the case should be remanded for further proceedings to determine whether the wetlands in question, between 10 and 20 miles from the nearest body of navigable water (*id.* at 720), were within the scope of the Act.  *Id.* at 757, 787.

Fortunately, the court need determine how lower courts have applied the split opinion in *Rapanos*; it suffices in this case to conclude that the Alliance has made no effort to prove that any portion of the Mills property qualifies as a "wetland" or other body of water within the scope of the CWA.  The Alliance points to dicta in the *Rapanos* plurality opinion recognizing that lower courts have interpreted the ban on discharge of pollutants in 33 U.S.C. § 1311(a) to cover not merely discharges directly to waters within the scope of the Act, but also to the discharges that "naturally wash[] downstream" into covered waters.  547 U.S. at 743.  What the Alliance does not do, however, is demonstrate that discharges onto the Mills property wash downstream into any body of water.  The Alliance has not so much as *named* a body of water, much less provided evidence that the Mills property is connected to a body of water in a way that would bring the City's alleged discharges within the scope of the Act.[4]  The Alliance bears the

---

[4] This omission may well be intentional.  As the court has noted, it appears that the ultimate goal of the Alliance and the Mills is to do as they please with the alleged "wetland" on the Mills property.  They would only frustrate that goal by demonstrating that the "wetland" is within the reach of the CWA.

ORDER – 4

burden of demonstrating a material issue of fact as to each element of its CWA claim. The City pointed out in its summary judgment motion the absence of evidence supporting a discharge into "the waters of the United States." That sufficed to discharge its burden as the moving party. *See Celotex*, 477 U.S. at 325 (explaining that a party moving for summary judgment may discharge its burden by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case") (internal quotation omitted). The Alliance offered no evidence in response. The court must therefore grant summary judgment that the Alliance has failed to prove a discharge of pollutants within the scope of the CWA. This ruling is wholly a result of the Alliance's lack of evidence, the court makes no affirmative ruling as to whether discharges on the Mills property fall within the scope of the CWA.

Although the Alliance fails to show a discharge of pollutants within the scope of § 1311(a), that is not necessarily the end of their suit. The citizen-suit provision of the CWA does not authorize suits specifically for violations of the Act, it authorizes suits (in relevant part) for violations of "an effluent standard or limitation" under the Act. 33 U.S.C. § 1365(a)(1). Those effluent standards include the anti-discharge provision of § 1311(a), but they also include any "permit or condition thereof issued under section 1342" of the Act. 33 U.S.C. § 1365(f)(1) & (6). Section 1342 establishes the National Pollutant Discharge Elimination System ("NPDES"). That system allows people and entities, public and private, to ensure compliance with § 1311(a) by obtaining permits to discharge pollutants into water. *Natural Resources Defense Council, Inc. v. County of Los Angeles*, No. 10-56017, 2013 U.S. App. LEXIS 16416, at *9-10 (9th Cir. Aug. 8, 2013). Discharges in compliance with an NDPES permit do not violate the CWA. *Id.* at 26-27. The CWA empowers the Environmental Protection Agency to delegate NPDES permit authority to the states. 33 U.S.C. § 1342(b). Washington is one of the states to which the EPA has delegated permitting power, and no one disputes that the City's

ORDER – 5

stormwater system is subject to the Washington Department of Ecology's general NPDES permit for similarly-sized municipal systems.

The Alliance's contends that the discharges on the Mills property violate the City's NPDES permit. It scarcely explains that contention. Its complaint cites a few specific clauses of the City's permit. *E.g.*, Compl. ¶¶ 44, 46, 50, 52. After the City used its summary judgment motion to demonstrate its permit compliance, the Alliance became much less specific. In the three paragraphs it devotes to the City's permit, the Alliance is content to allege merely that because the City does not have the Mills' permission to discharge stormwater on their property, it is not in compliance with the permit. It cites no portion of the permit, a document more than 60 pages long, to support its contention. It also contends that the City violated an unspecified portion of the permit by failing to include structures on the Mills property in its map of its municipal stormwater system.

The court need not decide if the Alliance's minimal effort to demonstrate an NPDES permit violation suffices to sustain its burden on summary judgment. Assuming that there is a genuine issue of fact regarding the City's permit compliance, the court finds no nexus between that violation and waters within the scope of the Clean Water Act. The permit in question is state-issued. It incorporates not only the requirements of the CWA, but also the requirements of Washington's environmental statutes. In short, it regulates not only the "waters of the United States" (those that are within the scope of the CWA), but also the waters of Washington. Without evidence of a permit violation that implicates the waters of the United States, there is no violation of the Clean Water Act, and thus no basis for this lawsuit.

//

//

//

//

ORDER – 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS the City of Duvall's motion for summary judgment.  Dkt. # 14.  The clerk shall DISMISS this action and enter judgment for the City.

Dated this 16th day of September, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 7