HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITIZENS' ALLIANCE FOR PROPERTY RIGHTS,<br><br>        Plaintiff,<br><br>    v.<br><br>THE CITY OF DUVALL,<br><br>        Defendant. | CASE NO. C12-1093RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on Plaintiff's motion for reconsideration of the court's September 16, 2013 order granting summary judgment in favor of Defendant. For the reasons stated below, the court concludes that its prior order was based in part on an error of law, and the court thus VACATES that order. The court concludes, however, that Defendant is nonetheless entitled to summary judgment on grounds that the court did not reach in its prior order. The court therefore GRANTS the motion for reconsideration (Dkt. # 32) solely to the extent that it requests that the court correct an error of law. The court directs the clerk to VACATE its September 16, 2013 judgment and to enter a new judgment for Defendant in accordance with this order.

## II. SUMMARY

Plaintiff, the Citizen's Alliance for Property Rights (the "Alliance"), contends that the City of Duvall is violating the Clean Water Act (33 U.S.C. Ch. 26, "CWA") by discharging pollutants onto property that two of its members, Steve and Rhonda Mills,

ORDER – 1

own.  There is no dispute that the City discharges stormwater onto the Mills Property, the only dispute is whether that discharge violates the CWA.

The court granted the City's motion for summary judgment for two reasons.  First, it concluded that the Alliance had offered no evidence that the City was discharging stormwater into the navigable waters of the United States.  Second, it concluded that the Alliance could not state a CWA claim merely by alleging that the City did not comply with its National Pollutant Discharge Elimination Permit ("NPDES Permit").

The Alliance moved for reconsideration on three grounds.  It contended that it had presented evidence of a discharge of stormwater into the navigable waters of the United States.  It contended that the CWA permits citizen suits for violations of an NPDES Permit.  Finally, it claimed that the court made its ruling because of "assumptions and/or inferences about [the Alliance]'s motives that were made in favor of [the City] . . . in violation of the standard on summary judgment."  Pltf.'s Mot. (Dkt. # 32) at 1.

A party moving for reconsideration must meet a high standard:

> Motions for reconsideration are disfavored.  The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Local Rules W.D. Wash. LCR 7(h)(1).

For the reasons stated herein, the court concludes that the Alliance satisfied this standard only to the extent that it argues, correctly, that the CWA permits citizen suits for violations of an NPDES permit without proof of a nexus between the violation and the navigable waters of the United States.  The court erred when it held otherwise.  The City is nonetheless entitled to summary judgment, however, because the Alliance did not offer evidence from which a finder of fact could conclude that the City has violated its NPDES permit.

ORDER – 2

### III.  ANALYSIS
### A.  The NPDES Permit System and CWA Citizen Suits

There is more than one way to violate the CWA, and more than one way for a citizen (or group of citizens) to sue for those violations.  The citizen suit provision of the CWA authorizes suits against local governments who are "alleged to be in violation of . . . an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1).  The Act is explicit as to seven categories of "effluent standard or limitation under this chapter" whose violation will satisfy the citizen suit provision.  33 U.S.C. § 1365(f)(1)-(7).  Two are relevant to this case: "an unlawful act under subsection (a) of section 1311" and "a permit or condition thereof issued under section 1342 . . . ."  33 U.S.C. § 1365(f)(1) & (f)(7).  Subsection 1311(a) makes it unlawful to discharge any pollutant except in compliance with various provisions of the CWA, and it is this provision that the City focused on in its summary judgment motion.  33 U.S.C. § 1311(a) ("Except as in compliance with this section and [other] sections . . . of this title, the discharge of any pollutant by any person shall be unlawful.").  Both subsection 1311(a) and subsection 1365(f)(7) mention section 1342 of the CWA, which is the portion of the Act authorizing NPDES permits.

An NDPES permit is thus an integral aspect of at least two types of CWA citizen suit.  The first, invoking subsection 1365(f)(1), is for the discharge of a pollutant without an NPDES permit, a cause of action that requires a plaintiff to prove that a defendant, without an NPDES permit, "(1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from (5) a point source." *Committee to Save Mokelumne River v. East Bay Mun. Util. Dist.*, 13 F.3d 305, 307-08 (9th Cir. 1993).  This was the only type of citizen suit that the City mentioned in its summary judgment motion.

The second type of CWA citizen suit is one, invoking subsection 1365(f)(7), for violation of an NPDES permit.  The City did not mention that type of suit in its motion for summary judgment and the Alliance offered no authority for that type of suit in its

ORDER – 3

response to that motion. Even on reconsideration, the Alliance cites no authority for a suit based purely on a violation of an NPDES permit. Regardless of the Alliance's citation of authority, there is binding authority recognizing that citizens can bring CWA suits to enforce an NPDES permit or a condition thereof. *NW Environmental Advocates ("NWEA") v. City of Portland*, 56 F.3d 979, 986 (9th Cir. 1995). Although some courts disagree, the Ninth Circuit has held that citizens may enforce "permit conditions based on both EPA-promulgated effluent limitations and state-established standards," including "requirements for retaining records of discharge sampling and for filing reports." *NWEA*, 56 F.3d at 988; *but see Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 12 F.3d 353, 358-59 (2d Cir. 1993) ("[S]tate regulations, including the provisions of SPDES permits, which mandate a greater scope of coverage than that required by the federal CWA and its implementing regulations are not enforceable through a citizen suit under 33 U.S.C. § 1365.") (internal quotation omitted).

**B.    The Alliance Did Not Cite Evidence Critical to Its Claim That the City's Discharge on the Mills Property Violates Subsection 1311(a).**

As to a citizen suit based on subsection 1311(a) of the CWA, the court granted summary judgment to the City because the Alliance offered no evidence of a discharge into the navigable waters of the United States.

> What the Alliance does not do . . . is demonstrate that discharges onto the Mills property wash downstream into any body of water. The Alliance has not so much as *named* a body of water, much less provided evidence that the Mills property is connected to a body of water in a way that would bring the City's alleged discharges within the scope of the Act.

Sept. 16, 2013 ord. (Dkt. # 28) at 4 (emphasis in original).

For the first time in its motion for reconsideration, the Alliance cited evidence that the City's discharges on the Mills property have an impact on the waters of the United States. For the first time, it cited a single sentence of its hydrology expert's report: "The storm water that is discharged onto the subject property is not 100% infiltrated and reenters the City's MS4 system which has an outfall on the Snoqualmie River." Pltf.'s

ORDER – 4

Mot. at 5 (quoting Neugebauer Decl. (Dkt. # 18), Ex. B at p.27). In other words, there is evidence that the City does not merely discharge water on the Mills property, but that at least some of that water reenters the City's stormwater system, which eventually discharges into the waters of the United States.

The Alliance could have cited that evidence in its response to the City's motion for summary judgment, but it did not. To obtain reconsideration of an order based on evidence, a party must show that the evidence "could not have been brought [to the court's] attention earlier with reasonable diligence." LCR 7(h)(1). The Alliance cannot meet that standard, because it plainly could have cited the pertinent portion of its own expert's report well before it moved for reconsideration.

To the extent that the Alliance believes the court erred by not finding the evidence on its own, it is mistaken. *See*, *e.g.*, *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) ("The party opposing summary judgment must direct the court's attention to specific, triable facts, and the reviewing court is not required to comb through the record to find some reason to deny a motion for summary judgment.") (internal citations, quotations, and alterations omitted). This court's local rules require all parties, "insofar as possible," to "cite the page and line of any part of the transcript or record to which their pleadings, motions, or other filings refer." LCR 7(e)(6). The Alliance's decision not to cite evidence critical to its opposition is its own error. *Dzung Chu v. Oracle Corp.*, 627 F.3d 376, 386 (9th Cir. 2010).

The Alliance also argued on reconsideration that the mere existence of an NPDES permit is somehow proof that the discharges on the Mills property are within the scope of the CWA. The Alliance is mistaken. An NPDES permit is necessary for discharges with a nexus to the waters of the United States; no permit (or at least no NDPES permit) is necessary to discharge pollutants into places lacking such a nexus. By failing to offer evidence of a discharge of pollutants into a place with a nexus to the waters of the United

ORDER – 5

States, the Alliance failed to meet its burden to show an unpermitted discharge within the scope of the CWA.

**C.    The Alliance Did Not Present Evidence From Which a Finder of Fact Could Conclude that the City Is In Violation of Its NPDES Permit.**

The court also granted summary judgment as to the Alliance's claim that the City is in violation of its NPDES permit. The court noted the dearth of evidence to support that claim. Sept. 16, 2013 ord. at 6 ("[The Alliance] cites no portion of the [City's NPDES] permit, a document more than 60 pages long, to support its contention."). But rather than decide if the "Alliance's minimal effort to demonstrate an NPDES permit violation suffices to sustain its burden on summary judgment," the court ruled that the lack of evidence of a nexus between any permit violation and the waters of the United States was fatal to the Alliance's claim. *Id.* That was error. The Ninth Circuit has never explicitly imposed a requirement of a nexus between an NPDES permit violation and the waters of the United States. It has, moreover, favorably cited cases holding the opposite. *NWEA*, 56 F.3d at 988-89 ("[C]itizen groups may enforce even valid permit conditions that regulate discharges outside the scope of the Clean Water Act, namely discharges that may never reach navigable waters.") (citing *Conn. Fund for Env't v. Raymark Indus.*, 631 F. Supp. 1283, 1285 (D. Conn. 1986). The parties cited no case law addressing citizen suits for permit noncompliance, but unlike a party's failure to cite evidence, the court cannot excuse its own legal error merely because a party failed to cite applicable law.

That the court made an error of law, however, does not necessarily mean that it erred when it granted summary judgment. The court expressly declined in September to decide whether the Alliance had provided evidence from which a finder of fact could conclude that the City was in violation of its NPDES permit. It now concludes that the Alliance did not meet its burden.

The City devoted a substantial portion of its summary judgment motion to evidence and arguments that any stormwater discharge on the Mills property was in

ORDER – 6

compliance with its NPDES permit.  In response, the Alliance argued that the City "must establish that its dumping of point source water from its M[unicipal Separate Storm Sewer Systems] onto the Mills Property is somehow in compliance with its NDPES permit to avoid liability."  Pltf.'s Opp'n (Dkt. # 17) at 8.  The Alliance was mistaken.  As the plaintiff, it would bear the burden of proof of permit noncompliance at trial.  The City established, through both evidence and argument, either that it complied with its permit or that there was no evidence to the contrary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that a party moving for summary judgment against the party who bears the burden of proof at trial need only point out "that there is an absence of evidence to support the nonmoving party's case"); *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (noting that moving party can meet its burden by "pointing out through argument" the absence of evidence supporting a plaintiff's claim).  That sufficed to obligate the Alliance to cite specific evidence to support its claim that the City is in violation of its NPDES permit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Devereux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001); *Fairbank*, 212 F.3d at 532.

The Alliance did not cite evidence of permit noncompliance.  It cited just two clauses of the permit, one that establishes only that the City remains liable to the extent that it delegates responsibility for permit compliance to another entity, and one that permits it to have secondary permittees.  The Alliance cited those clauses in suggesting that the City's discharges on the Mills property effectively make the Mills property part of its stormwater management plan.  Even if the court accepts that assertion, the Alliance has cited no evidence that the City's use of the Mills property in this manner is a violation of its NPDES permit.

Because the Alliance did not cite evidence from which a finder of fact could conclude that the City violated its NPDES permit, the court grants summary judgment despite the legal error in its September 2013 order.

ORDER – 7

Before concluding, the court considers the Alliance's assertion that the September 16 order was the result of the court's statements regarding the Alliance's motives in filing this suit. The Alliance's motives had no bearing on the September 16 order, its failure to cite evidence did. The court discussed the Alliance's goal of ultimately permitting the Mills to do as they wish with their property, but it did so in considering whether the Alliance had a strategic reason for failing to offer evidence of a nexus between the City's discharges on the Mills property and the waters of the United States. That consideration ultimately had no impact on the court's ruling.

## IV.  CONCLUSION

For the reasons stated above, the court VACATES its September 16, 2013 order granting summary judgment (Dkt. # 28) and the judgment (Dkt. # 29) that accompanied that order. The court GRANTS the Alliance's motion for reconsideration (Dkt. # 32) solely to the extent that it requests that the court correct an error of law. The court concludes that the City is entitled to summary judgment despite that legal error. The court therefore directs the clerk to enter a new judgment for the City.

Dated this 8th day of April, 2014.

Richard A. Jones
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8